******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HELEN MONTS *v.* BOARD OF EDUCATION OF THE CITY OF HARTFORD
## (AC 43856)

Prescott, Suarez and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, disability discrimination pursuant to the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.) and for interference with the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.) following the termination of her employment. The plaintiff was first hired by the defendant in 1995 but her position was eliminated and she was terminated in June, 2015. The plaintiff was rehired for a new position in August, 2015, and was subject to a probationary period for her first 120 days at work. In September, 2015, the plaintiff injured her left knee and lower back while at work. The plaintiff was placed on modified work duty but was eventually placed on an indefinite leave of absence and remained on leave until October, 2015. She missed additional work in November, 2015, after she experienced a flare-up of her knee injury. All of the time that she missed from work was considered workers' compensation leave by the defendant. The plaintiff received two negative performance evaluations in January and February, 2016, based solely on her performance while she was at work. The plaintiff was terminated for her poor job performance in March, 2016. During the trial on the plaintiff's complaint, the trial court declined to instruct the jury on the plaintiff's FMLA interference claim, concluding that there was no evidence to support the claim that the plaintiff made an FMLA request to the defendant. On the plaintiff's remaining claims, the jury returned a verdict for the defendant and the court rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly declined to charge the jury with regard to the plaintiff's claim of interference with the Family and Medical Leave Act of 1993: the plaintiff failed to satisfy the preliminary requirement for the court to consider her interference claim, namely, that she made an initial showing that she was denied a right under FMLA, as there was no evidence that the plaintiff made an FMLA request to the defendant and, thus, the defendant had no notice that she was interested in utilizing FMLA leave; moreover, the court's determination that the defendant's policy with regard to nonconcurrent applications of workers' compensation leave under the Workers' Compensation Act (§ 31-275 et seq.) and FMLA leave worked to the benefit of the plaintiff, was supported both by federal regulation and by common sense, as allowing or requiring the plaintiff to use both forms of leave at the same time would have diminished the total legally available amount of her paid and unpaid leave; furthermore, the plaintiff offered no evidence to demonstrate to the jury that she was prejudiced by the defendant's long-standing policy not to run workers' compensation leave and FMLA leave concurrently, and, even if such evidence had been offered, it would not have been relevant to the defendant's evaluations of the plaintiff's work during her probationary period.

2. The trial court did not err in admitting into evidence a letter written by the plaintiff's coworker, containing observations about the plaintiff's workplace behavior and performance, under the business records exception to the hearsay rule: the letter was made in the regular course of the defendant's business, as the record made clear that it was standard procedure for the defendant to subject new employees to a probationary period, based on their actual days at work, and to evaluate the performance of these employees during that period; moreover, even if the letter was inadmissible hearsay, any error in its admission into evidence was harmless because the author of the letter also testified at trial, and the opinions expressed in the letter were made directly to the jury and the plaintiff did not object to the testimony.

3. The trial court did not abuse its discretion in refusing to admit into evidence certain medical records of the plaintiff; the records the plaintiff

sought to admit into evidence were created after the date of her termination of employment and described her condition as it existed approximately six months after she was terminated and the court concluded that the evidence lacked probative value as to whether the plaintiff had a chronic condition at the time she was employed by the defendant, the records containing no information as the plaintiff's condition at the time she was discharged.

Argued May 20—officially released July 20, 2021

*Procedural History*

Action to recover damages for, inter alia, alleged disability discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Scholl, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*Lisa S. Lazarek*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Helen Monts, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, the Board of Education of the City of Hartford. On appeal, the plaintiff claims that the court erred by (1) failing to charge the jury on her claim of interference with the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq. (2012), (2) admitting inadmissible hearsay into evidence, and (3) precluding evidence showing that she was disabled within the meaning of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff initially was hired by the defendant in February, 1995, as a "house secretary." In 2014, the plaintiff was employed by the defendant as an executive assistant at Opportunity High School in Hartford. On June 30, 2015, after being notified that her position was being eliminated, the plaintiff's employment was terminated by the defendant. On August 26, 2015, the defendant rehired the plaintiff as a secretary in the facilities department. As was customary for the defendant, the plaintiff's employment in this position was subject to a 120 "working day" probationary period, meaning that she was subject to enhanced scrutiny, and potential termination, based on her performance during her first 120 days at work in her new position. On September 1, 2015, the plaintiff injured her left knee and lower back while in the workplace. On that same day, the plaintiff reported her injuries to the defendant and received medical care.

After receiving care for her workplace injuries, the plaintiff was placed on modified work duty, in accordance with her physicians' recommendations that she work reduced hours and refrain from lifting objects or standing. After the plaintiff began experiencing radiating pain and numbness in her leg, she was placed on an indefinite leave of absence. The plaintiff remained on leave until October 28, 2015, when she returned with the recommendations that she not lift objects or stand. On November 2, 2015, the plaintiff experienced another flare-up of her knee injury that required her to miss additional time from work. All of the time that the plaintiff missed from work was considered workers' compensation leave by the defendant because her injuries were work-related and because the plaintiff had not requested FMLA leave. In any event, it was the longstanding policy of the defendant not to run FMLA leave concurrently with workers' compensation leave. The defendant instituted and applied this policy because, unlike workers' compensation leave, FMLA leave could be used to care for a sick family member or for the employee's own nonwork related injury or illness. The

policy had been in place since at least 1997.

On January 26, 2016, the plaintiff received a negative performance evaluation informing her that her quality of work, adaptability, and planning and organizing needed improvement. On February 24, 2016, the plaintiff received a second negative performance evaluation, this time noting that her quality of work was unsatisfactory, and that she had not shown improvement in any performance categories since her last evaluation. Both performance evaluations were based solely on the plaintiff's performance while she was at work and did not consider her absences that resulted from her injuries. On March 2, 2016, while the plaintiff was still in her probationary period, the defendant terminated her employment on the basis of her poor job performance. At the time of her termination, the plaintiff was still being treated for her knee injury.

On March 2, 2018, the plaintiff commenced this action against the defendant, alleging in a five count complaint that it had engaged in (1) disability discrimination in violation of CFEPA, (2) retaliation in violation of CFEPA, (3) retaliation in violation of § 31-290a of the Workers' Compensation Act, General Statutes § 31-275 et seq., (4) interference with her exercise of rights under FMLA, and (5) FMLA retaliation.

At trial, the plaintiff argued that there was sufficient evidence to support her allegations in counts four and five of FMLA interference and retaliation, and submitted to the court proposed jury instructions on those counts. The plaintiff also argued that there was sufficient evidence for the jury to conclude that the plaintiff had put the defendant on notice that her injuries were likely an FMLA qualifying event. The court, however, declined to instruct the jury on the plaintiff's FMLA counts, concluding that there was no evidence "to support the claim that the plaintiff even made an FMLA request to the defendant." The court ultimately charged the jury on the plaintiff's remaining counts, and the jury returned a verdict in favor of the defendant on those counts. The court then rendered judgment for the defendant. It is from this judgment that the plaintiff appeals. On appeal, the plaintiff claims that the court erred by (1) failing to charge the jury on her FMLA interference claim,[1] (2) admitting inadmissible hearsay into evidence, and (3) precluding evidence showing that she was disabled within the meaning of CFEPA. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff's first claim is that the court erred by failing to charge the jury on her FMLA interference claim. Specifically, the plaintiff claims that "[t]he evidence in the case supported a jury charge on the FMLA interference claim," and that "[t]he trial court's reason-

ing for not charging the jury on the . . . claim was flawed." According to the plaintiff, the court (1) improperly "assumed that the defendant's policy was to not run the FMLA [leave] concurrently with [the] workers' compensation leave," and (2) failed to account for the fact that an "FMLA interference claim does not require proof of intent." In response, the defendant argues that "[g]iven the lack of any evidence that the plaintiff was harmed by the [defendant's] policy not to run the two leaves concurrently, there was no reason for the trial judge to put this claim to the jury . . . ." We agree with the defendant.

"It is well established that [j]ury instructions should be confined to matters in issue by virtue of the pleadings and evidence in the case. . . . It is error to submit a specification . . . to the jury in respect to which no evidence has been offered." (Internal quotation marks omitted.) *Al-Janet, LLC* v. *B & B Home Improvements, LLC*, 101 Conn. App. 836, 841, 925 A.2d 327, cert. denied, 284 Conn. 904, 931 A.2d 261 (2007). In the present case, the court's decision to not charge the jury regarding the plaintiff's FMLA interference claim is "tantamount to a directed verdict." *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 371, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001). Thus, the standard of review that we must apply is that applicable to directed verdicts. "Our standard of review of a directed verdict is well settled. A trial court should direct a verdict for a defendant if, viewing the evidence in the light most favorable to the plaintiff, a jury could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail." (Internal quotation marks omitted.) Id., 371–72.

With regard to claims of FMLA interference, our Supreme Court has "endorse[d] the framework employed by the majority of federal courts . . . ." *Cendant Corp.* v. *Commissioner of Labor*, 276 Conn. 16, 31, 883 A.2d 789 (2005). Under this burden-shifting framework, "the employee [must] make an initial showing that she has been denied a right under FMLA and that the denial of that right was caused in part by her leave. . . . Once an employee has made this showing, liability attaches to the employer for a violation of FMLA. . . . [A]n employee alleging a claim of interference under FMLA does not need to prove the employer's intent for liability to attach to the employer. . . . To underscore the immateriality of the employer's intent, some courts have described this attachment of liability to the employer absent a showing of intent as 'strict liability.' . . . [T]he use of the term 'strict liability' signifies only that an employee need not prove the employer's intent when claiming that the employer interfered with her rights under FMLA. . . . An employer may overcome the attachment of so-called strict liability by demonstrating, by way of affirmative defense, that an employee would have been terminated

even if she had not taken leave. . . . Accordingly, the framework . . . places on the employer the ultimate burden of proving that the employee would have been terminated even if she had not taken leave." (Citations omitted.) Id., 28–30.

In the present case, the court, in declining to charge the jury on the plaintiff's FMLA interference claim, found that the trial evidence did not support this claim, and that "there was not any real evidence to support the claim that [the] plaintiff even made an FMLA request to the defendant." Thus, the plaintiff did not satisfy the preliminary requirement for the court to consider her claim that an FMLA interference claim does not require proof of intent. The court further found that "there was evidence that the benefits of the Workers' Compensation Act were better for the plaintiff than [they] would have been under the FMLA. And that [the] policy that the [defendant] stated about [not] running FMLA and workers' compensation benefits concurrently was to the benefit of the plaintiff." Our review of the record supports the court's findings. There is nothing in the record to suggest that the plaintiff ever requested FMLA leave, and thus the defendant had no specific notice that she was interested in utilizing it. Additionally, it is clear that the defendant's policy with regard to the nonconcurrent applications of workers' compensation and FMLA leave was long-standing, and that it worked to the benefit of the plaintiff and other employees because workers' compensation leave applies only to a work-related personal illness or injury, while FMLA leave could be used for nonwork-related situations such as the need to care for an ill or injured family member. This conclusion is supported by both federal regulation[2] and by common sense; to allow or to require the plaintiff and other employees to use both forms of leave at the same time diminishes the total legally available amount of their paid and unpaid leave. Furthermore, the plaintiff offered no evidence to demonstrate to the jury that she was prejudiced by the defendant's policy of nonconcurrent leaves and, even if such evidence had been offered, it would not be relevant to the defendant's evaluations of the plaintiff's work during the times she was present during the probationary period. Therefore, we conclude that the court properly declined to charge the jury with regard to this claim.

## II

The plaintiff's second claim is that the court erred by admitting inadmissible hearsay into evidence. Specifically, the plaintiff claims that the evidence at issue— a letter written by Hope Newton, the plaintiff's coworker, at the request of her supervisor—was improperly admitted into evidence during Newton's testimony under the business records exception to the hearsay rule. The letter at issue contained Newton's observations of the plaintiff's workplace behavior and

performance. According to the plaintiff, the letter is "not a business record because it was not in Newton's regular course of business to create such a document." The defendant counters that the plaintiff's reading of this exception is "unduly narrow," and that the court properly admitted the letter under the exception. We agree with the defendant.

Both the plaintiff and the defendant state that the standard of review of the court's ruling on this issue is that of abuse of discretion. "It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Emphasis omitted; internal quotation marks omitted.) *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 628, 43 A.3d 722, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012), and cert. denied, 305 Conn. 920, 47 A.3d 389 (2012); see also *McNeff* v. *Vinco, Inc.*, 59 Conn. App. 698, 701, 757 A.2d 685 (2000). However, "[t]o the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary." (Internal quotation marks omitted.) *State* v. *Maguire*, 310 Conn. 535, 572, 78 A.3d 828 (2013).

The court admitted the letter into evidence under the business records exception, which states: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course *of any business*, and that it was the regular course *of the business* to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." (Emphasis added.) Conn. Code Evid. § 8-4 (a). The plain language of § 8-4 (a) makes clear that the business records exception applies when the record at issue was made in the regular course of the business, not in the regular course of the general work responsibilities of the individual who authors it. In light of the record, which makes clear that it was standard procedure for the defendant to subject new employees to a probationary period, based on their actual days at work, and to evaluate the performance of these employees during that period, we conclude that the court did not err in admitting the letter into evidence under the business records exception.

In any event, even if we were to determine that there was error in the admission of the letter and that it was

inadmissible hearsay, that error would be harmless. This is true because, in light of Newton's testimony, to which the plaintiff did not object, the same opinions expressed in the letter were made directly to the jury, and, therefore, even if the letter had been excluded, the result would almost certainly have been the same. See *In re Tayler F.*, 111 Conn. App. 28, 54, 958 A.2d 170 (2008) ("[T]he court abused its discretion by ruling that the information in [a] report was admissible under the business record exception to the hearsay rule. The respondent, however, cannot show that any harm resulted from the erroneous admission . . . [because] a witness to all of the events discussed in the report testified about all of the allegations in the report." (Citation omitted.)), aff'd, 296 Conn. 524, 995 A.2d 611 (2010); see also *Iino* v. *Spalter*, 192 Conn. App. 421, 431, 218 A.3d 152 (2019) ("[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.)).

### III

The plaintiff's final claim is that the court erred by refusing to admit into evidence certain "medical records [that] were relevant to proving that [the] plaintiff had a disability within the meaning of [CFEPA]." In response, the defendant claims that "[t]he [plaintiff's] position in this regard is unavailing because there was sufficient medical evidence on the record pertaining to [her] condition from which the jury could have determined whether [she] was disabled . . . ." We agree with the defendant.

As discussed previously, a court's ruling on the admissibility of evidence is entitled to great deference, and a ruling on evidentiary matters will not be overturned unless there is a clear showing that the court abused its discretion. *Tomick* v. *United Parcel Service, Inc.*, supra, 135 Conn. App. 628. "Evidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 227–28, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002).

At trial, the plaintiff offered as full exhibits the medical records at issue, which were created after the date of the termination of her employment. The defendant objected to their admission on the ground of relevance. In sustaining the defendant's objection, the court stated:

"I'm not so sure [this evidence] has probative value as to whether she had a chronic condition at that time she was [employed by the defendant]—I mean you want [the jury] to be able to speculate that because she had a chronic condition . . . six months later she's got a chronic condition . . . prior too." The records at issue clearly were created after the plaintiff's employment with the defendant was terminated, and, crucially, described her condition as it existed approximately six months after she was terminated. There is nothing in these records that refers to the plaintiff's condition at the time she was discharged; each report refers only to her condition at the time the record was made. Therefore, the court did not abuse its discretion in excluding these reports from evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff appeals only with regard to the FMLA interference count and does not take issue with the court's refusal to charge the jury on her FMLA retaliation count.

[2] Title 29 of the Code of Federal Regulations, § 825.702 (d) (2), provides in relevant part that "[a]n employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave *may* run concurrently (subject to proper notice and designation by the employer)." (Emphasis added.) Thus, when an employee is out on workers' compensation leave, there is no requirement that the employer run the employee's FMLA leave concurrently. In fact, an employer cannot run the leaves concurrently unless they take specific additional steps designed to put the employee on notice that his or her limited amount of FMLA leave is going to be used.